754 P.2d 536

**Crucita Baca SANCHEZ, Petitioner–Appellee,**

v.

**William Steve SANCHEZ, Respondent–Appellant.**

No. 9879.

Court of Appeals of New Mexico.

March 29, 1988.

Certiorari Denied May 10, 1988.

Patsy D. Reinard, Socorro, for petitioner-appellee.

Michael E. Vigil, Marchiondo, Vigil & Voegler, P.A., Albuquerque, for respondent-appellant.

**OPINION**

DONNELLY, Chief Judge.

This is an appeal arising out of an extended dispute between the parties, William Sanchez (father) and Crucita Sanchez (mother), involving custody of their five-year-old daughter. The father asserts three issues on appeal: (1) whether the district court had jurisdiction over the parties and the subject matter of the action; (2) whether the district court abused its discretion in awarding joint legal and physi-

cal custody of the minor child to both parents; and (3) whether the district court had jurisdiction to hold the father in contempt for failure to transfer physical custody of the child to the mother. We affirm in part and reverse in part.

The parties were divorced on June 3, 1985 by a partial decree of divorce entered in the Socorro County District Court. Prior to entry of the partial divorce decree, both parties filed separate actions for dissolution of marriage and for child custody. The mother filed a petition for dissolution of marriage on February 12, 1985, in the Socorro County District Court; the father received service of process on February 18, 1985. On February 13, 1985, the father filed a petition for dissolution of marriage in the Valencia County District Court; the mother received service of process that same day. The father also obtained an order from the Valencia County District Court that same day granting him temporary child custody.

On February 22, 1985, a hearing was held in the Valencia County District Court concerning the temporary custody order; the mother and her counsel appeared and argued this issue. The court ruled that temporary custody should go to the father. The order, however, does not appear in the record before us.

At a hearing held in the Socorro County District Court on March 4, 1985, the father's attorney filed a special entry of appearance and a motion to abate the action, asserting that prior jurisdiction had vested in Valencia County because service of process was perfected there first. The Socorro County District Court entered an interim order finding that pursuant to SCRA 1986, 1–003 (previously NMSA 1978, Civ.P.R. 3), jurisdiction was properly grounded in Socorro County because the mother had filed her petition prior to the father's filing, and that venue was proper under NMSA 1978, Section 40–4–4 "because every indicia of residency is in Socorro County". The interim court order accepted jurisdiction in the case and denied the father's motion to abate; the court also allowed the father an opportunity to seek an interlocutory appeal

or writ of prohibition. He sought neither. Finally, the court order set a hearing for March 18, 1985, in Socorro County, on the issue of custody pendente lite.

At the March 18 hearing, the district court reviewed and reaffirmed its interim order and concluded that it had exclusive jurisdiction and proper venue. The father was enjoined from prosecuting the Valencia County action under penalty of contempt. The Socorro County District Court again allowed the father to seek an interlocutory appeal, however, he made no application.

On April 2, 1985, the father's new counsel filed an entry of appearance in the Socorro County action, and at an April 3 hearing on temporary custody, his counsel expressly acceded to that court's jurisdicton. At this hearing the parties agreed to interim joint physical and legal custody, with alternating weekend visitation rights. At trial the mother conceded that she used marijuana and continued to use it at the present time. At least one witness testified that the mother had also sold marijuana.

On June 3, 1985, a partial decree of divorce was entered by the Socorro County District Court, together with a pretrial order detailing interim custody. Because transfer of the child between the parties had been acrimonious, the court prohibited the parties from having family or friends within five blocks at the time of the exchange. The partial decree of divorce expressly reserved all other remaining issues for later determination. Thereafter, the parties filed a number of motions relating to modification of interim custody and discovery. The trial court held eighteen separate hearings concerning child custody over a period of fifteen months.

On January 3, 1986, the father again employed a new attorney and a lengthy trial on the merits began. The trial court filed its findings and conclusions November 19, 1986, and a final judgment on child custody and support was entered on February 6, 1987. The final judgment declared that joint legal and physical custody was in the best interest of the child, and that

custody was to alternate every two weeks with weekend visitation by the noncustodial parent. The father was directed to pay $50 child support each week the child was with her mother. He was also ordered to pay $3,500, payable at the rate of $100 per month, towards the mother's legal expenses, plus interest of 12% per annum on the unpaid balance from January 1, 1987. The father filed and was granted a motion for partial stay pending appeal, pursuant to SCRA 1986, 1–062, on March 5, 1987.

## I. JURISDICTION

■ The father challenges the jurisdiction of the Socorro County District Court to adjudicate the matters raised in the mother's petition for dissolution of marriage. He contends that prior jurisdiction was acquired by the Valencia County District Court because service of process was perfected there first. It is the father's position that service of process, rather than date of filing, controls as to priority of jurisdiction between courts of concurrent jurisdiction, and therefore his motion to abate the Socorro County action should have been granted. He asserts that this issue is reviewable on appeal pursuant to SCRA 1986, 12–216(B), despite the fact that he acceded to jurisdiction in Socorro County and submitted a requested conclusion of law that Socorro County had jurisdiction over the subject matter and the parties. Rule 12–216 provides in part:

> A. Preserving questions for review. To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked * * * *
> B. Exceptions. This rule shall not preclude the appellate court from considering jurisdictional questions * * * *

The father asks this court to vacate the final judgment appealed from, and to remand the case to the Socorro County District Court with instructions to abate the action and permit the Valencia County action to proceed. *See Burroughs v. United States Fidelity & Guaranty Co.,* 74 N.M. 618, 397 P.2d 10 (1964).

Although the father correctly states the general rules regarding appellate review of issues involving challenges to subject-matter jurisdiction and venue, these rules are not controlling in the present case. The father has waived venue and consented to jurisdiction through his filing of various motions and his participation in the hearings and trial on the merits. *See Csanyi v. Csanyi,* 82 N.M. 411, 483 P.2d 292 (1971). Moreover, he also acquiesced in the entry of a partial decree of divorce by the Socorro County District Court. Thus, he effectively submitted himself to the jurisdiction of that court. *See Murphy v. Murphy,* 96 N.M. 401, 631 P.2d 307 (1981); *In re Johnson,* 94 N.M. 491, 612 P.2d 1302 (1980).

The father's contention that he had no alternative but to accede to jurisdiction in Socorro County, due to Judge Kase's injunction prohibiting prosecution of the Valencia County action, is also without merit. The record indicates that Judge Kase accorded him two separate opportunities to seek an interlocutory appeal or seek an appropriate writ regarding his determination that Socorro County District Court had exclusive jurisdiction and proper venue. The father did not seek appellate review on either occasion. Accordingly, the father's requested relief on this issue is denied.

## II. AWARD OF JOINT CUSTODY

The father asserts that the trial court abused its discretion in awarding the parties joint legal and physical custody of their minor child and providing for alternating custody every two weeks. We address a preliminary question raised by the parties concerning which joint custody statute is applicable to the case before us. The father contends that NMSA 1978, Section 40–4–9.1(A) (Cum.Supp.1982), prior to its amendment in 1986, controls in this case. This provision states that "[i]n any proceeding in which there is at issue the custody of a minor, the court should first consider an award of joint custody of the minor if it is in the best interests of the minor." This provision was amended in 1986 and provides for a "presumption that joint custody is in the best interest of a child in an initial custody determination." NMSA 1978, § 40–4–9.1(A) (Repl.1986).

■ The father claims the trial court erred in applying a presumption of joint custody; he relies upon New Mexico Constitution, article IV, section 34, which states that "[n]o act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case", as support for this argument. Alternatively, he asserts that even if application of this presumption was proper, the totality of the evidence presented rebutted a finding that joint custody is in the best interests of the child.

The mother, on the other hand, argues that the amended version of the statute and its presumption of joint custody applies to all cases pending on May 21, 1986, the effective date of the statute, and thus applies to the instant case, citing *Olsen v. Olsen*, 98 N.M. 644, 651 P.2d 1288 (1982). She also asserts that the father did not meet his burden of showing that joint custody was not in the best interests of the minor child. We determine that the district court correctly applied the pre–1986 statute. Under the former statute there was no presumption that joint custody was in the child's best interest.

The father contends that the district court abused its discretion in awarding joint legal and physical child custody to both parties. In New Mexico, the trial court has wide discretion in awarding custody of a child in a divorce case, and the welfare of the child is the primary factor in determining whether joint custody should be awarded. *Creusere v. Creusere*, 98 N.M. 788, 653 P.2d 164 (1982); *Jaramillo v. Jaramillo*, 103 N.M. 145, 703 P.2d 922 (Ct.App.1985), *appeal after remand, Seeley v. Jaramillo*, 104 N.M. 783, 727 P.2d 91 (Ct.App.1986); *see also* NMSA 1978, § 40–4–9 (Repl.1986). The determination of the trial judge will not be overturned absent a clear abuse of discretion. *Flinchum Constr. Co. v. Central Glass & Mirror Co.*, 94 N.M 398, 611 P.2d 221 (1980); *Archuleta v. Jacquez*, 103 N.M. 254, 704 P.2d 1130 (Ct.App.1985). However, a judgment based on findings of fact not supported by substantial evidence, which findings have been properly attacked, cannot be sustained on appeal and must be reversed.

*Whorton v. Mr. C's*, 101 N.M. 651, 687 P.2d 86 (1984); *Getz v. Equitable Life Assurance Soc'y of United States*, 90 N.M. 195, 561 P.2d 468, *cert. denied*, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate support for a conclusion. *Clovis Nat'l Bank v. Harmon*, 102 N.M. 166, 692 P.2d 1315 (1984); *Sanchez v. Molycorp, Inc.*, 103 N.M. 148, 703 P.2d 925 (Ct.App.1985).

The court heard the testimony of three clinical psychologists: Dr. Harold Paine, Dr. Dennis Pilgrim and Dr. Margie Trujillo. Both Drs. Paine and Pilgrim recommended that primary custody and responsibility for the upbringing of the minor child be placed with the father. In general, they found that the mother's less stable and more dependent life style would not be conducive to sole custody, and that the father appeared more capable of providing a stable and less interrupted environment. Dr. Paine stated that "continuing custody shared on a 50/50 basis" was not in the best interests of the child. While Dr. Trujillo testified that she would have no concern with placing the minor child with the mother, she also indicated that she had neither interviewed nor met the father. Additionally, the mother admitted at trial that she had used marijuana in the past and that she continued to use it on occasion.

The trial court's finding no. 9, found that "[t]o be effective joint legal custody requires that the parents be willing and able to communicate and cooperate with each other and reach agreement on issues regarding the child's needs * * * *'" This finding succinctly encapsulates an important aspect of joint custody.

■ In considering whether joint custody would promote the best interests of a child, the trial court must determine (1) whether the child has established such relationships with both parents that he or she would benefit from joint custody, (2) that both parents are fit, (3) that both parents desire continuing involvement with the child, and (4) that both parents are able to

communicate and cooperate in promoting the child's best interests. *Strosnider v. Strosnider,* 101 N.M. 639, 686 P.2d 981 (Ct.App.1984). In determining the custody of children, the best interests and welfare of the children is, however, the controlling inquiry of the court. *See Creusere v. Creusere; Boone v. Boone,* 90 N.M. 466, 565 P.2d 337 (1977).

The ability to cooperate concerning joint child custody does not require the parents to have a totally amicable relationship, however: " 'a successful joint custody arrangement requires * * * that the parents be able to isolate their personal conflicts from their roles as parents and that the children be spared whatever resentments and rancor the parents may harbor.' " *Strosnider,* 101 N.M. at 645, 686 P.2d at 987 (quoting *Beck v. Beck,* 86 N.J. 480, 498, 432 A.2d 63, 71–72 (1981)). As stated in 2 J. McCahey, M. Kaufman, C. Kraut, D. Gaffner, M. Silverman & J. Zett, *Child Custody & Visitation Law & Practice* Section 13.06[1] (1987):

A more difficult factor to assess is the post-divorce ability of the parents to cooperate in decisions concerning major aspects of child-rearing. Such cooperation requires setting aside interspousal differences and considering first the interests of their child * * * * However, if parents have never been able to cooperate on the basic decisions of raising a child, the child is likely to become the victim of parental tug-of-war. In these situations, joint custody is "an invitation to continued warfare and conflict." [Footnotes omitted.]

Our concern here is with the fourth factor enumerated in *Strosnider.* An award of joint legal custody contemplates an equal exercise of authority by parents who share the responsibility of making important decisions regarding their child. *Strosnider.*

The district court's finding of fact no. 10, challenged by the father on appeal, states that the parties "have shown the ability to communicate and cooperate with each other in promoting the child's best interests and needs on those occasions when they have set aside their present differences and have not been unduly influenced by their respective families and friends." The expert witnesses, however, agreed that the mother remains quite hostile and angry toward the father and his family, and that she has a tendency to feel provoked and to become defensive in her interactions with the father. Similarly, the experts agreed that the parties lack the ability to communicate with each other on a rational level, primarily due to the mother's feelings of anger and hostility toward the father. Both Drs. Paine and Pilgrim opposed joint custody due to the parties' inability to communicate on the level necessary for such an arrangement to work and benefit the child. Dr. Trujillo agreed that the mother's attempts to communicate with the father have not been successful.

The mother, on the other hand, contends that because the interim order provided for joint custody, this indicates that the parties are able to communicate sufficiently. This argument, however, is not supported by the record. As previously noted, the exchanges of child custody were so acrimonious that the trial judge was forced to enter an order prohibiting the parties from having any family or friends within five blocks area when the exchange of physical custody of their daughter occurred, and the relationship between the parties was such that the court was required to hold eighteen separate hearings in connection with child custody issues during the pendency of the action.

A review of the record reveals that there is no substantial evidence on which to base a finding that both parents are able to communicate and cooperate in promoting the child's best interests or to work together sufficiently and in such manner so as to justify an award of joint legal and physical child custody. This erroneous finding, in turn, forms part of the basis of the district court's judgment awarding joint custody. Because there is no substantial evidence to support this key requirement, we determine that under the pre–1986 joint custody statute applicable in this case, there is no presumption that joint custody is in the best interests of the child, and there is no

substantial evidence to support the district court's finding that joint legal and physical custody is in the child's best interest. Thus, the award of joint custody was error.

## III. ISSUE OF CONTEMPT

The father contends that the trial court lacked jurisdiction to find him in criminal contempt based upon his failure to relinquish physical custody of the child in April, 1986, in accordance with the court's interim custody order. Although the court orally stated that it found the father to be in contempt, the record does not indicate that a formal order was entered, nor does it indicate that any sentence was in fact imposed. Accordingly, this issue is not ripe for appeal. *See State v. Morris*, 69 N.M. 89, 364 P.2d 348 (1961); *City of Raton v. Martinez*, 103 N.M. 92, 703 P.2d 189 (Ct. App.1985).

## IV. CONCLUSION

The cause is remanded to the trial court with instructions to set aside the award of joint legal and physical custody and for further proceedings consistent with this opinion and best interests and welfare of the child. The parties shall each bear their own costs and attorney fees on appeal. We deem oral argument unnecessary. *Garcia v. Genuine Parts Co.*, 90 N.M. 124, 560 P.2d 545 (Ct.App.1977).

IT IS SO ORDERED.

ALARID, J., concurs.

BIVINS, J., concurs in part & dissents in part.

BIVINS, Judge (concurring in part, dissenting in part).

I agree with the majority affirming on issues 1 and 3, but I am unable to agree on issue 2, the award of joint custody. The trial court, in my view, should also be affirmed on that issue.

"A trial court has wide discretion in awarding custody of a child in a divorce case, and the welfare of the child is of primary importance in making the award." *Creusere v. Creusere*, 98 N.M. 788, 789–790, 653 P.2d 164, 165–166 (1982). We review an award of custody for abuse of discretion. *Id.*

In finding an abuse of discretion, the majority focus on the trial court's findings of fact Nos. 9 and 10. Those findings state:

9. To be effective joint legal custody requires that the parents be willing and able to communicate and cooperate with each other and reach agreement on issues regarding the child's needs, including the child's care and control, education, health, and religion.

10. Although the parties do not have an amicable relationship, they have shown the ability to communicate and cooperate with each other in promoting the child's best interests and needs on those occasions when they have set aside their present differences and have not been unduly influenced by their respective families and friends.

While admittedly less than overwhelming, there was evidence to support finding No. 10. There was evidence that prior to the April 3 hearing, the parties agreed to joint legal and physical custody when and if Dr. Trujillo filed her report; that the animosity at the exchanges was primarily attributable to the father's family's and friends' "use of intimidating tactics"; and that on May 17 the trial court stated it had received Dr. Trujillo's report and, according to the parties' stipulation, joint custody should commence. Moreover, the two other experts' objections to joint custody seem to be based more on their personal philosophies regarding that concept than its application to this case. Finally, as the trial court found, the joint custody arrangement is not significantly different from the sole custody with liberal visitation recommended by father's expert, Dr. Pilgrim.

By awarding joint custody, it appears the trial court was trying to avoid giving one party or the other the sense that they have won the child. There are indications in the reports of father's expert witnesses that the parties were competing in a winner/loser format. The trial court may well have had concerns that an award of sole custody

would only aggravate the communication problems that presently exist, with the custodian taking advantage of the fact that he or she emerged victorious, to the disadvantage of the noncustodial parent's rights. Even father's expert agrees with the importance that the child maintain a close relationship with both parents.

It is certainly feasible to infer that the trial court, upon the opinion of all experts, felt that the most important factor in the best interests analysis was that the child maintain a close relationship with both parents, and that the only way to effectuate this would be to award joint custody.

Considering all of the trial court's findings, including those which track the factors under NMSA 1978, Section 40–4–9.1 (Repl.1986)[1], I am unable to say there was a manifest abuse of discretion. For example, the trial court, among other things, found that the child has established a close relationship with each parent and with the grandparents on both sides; that both parents are capable of providing adequate care for the child throughout each period of responsibility, including arranging for her care by others as needed; each parent has shown a willingness to accept all responsibilities of parenting, including a willingness to accept care at specified times and to relinquish care to the other parent without intrusion; that the child can best maintain and strengthen her relationship with both parents through frequent, predictable contact and that the child's development will profit from such involvement and influence from both parents; that the geographic distance poses no obstacle to joint custody; and that joint legal and physical custody is in the best interests of the child.

The trial court recognized that both parties are immature and need improvement in parenting skills. It also acknowledged the mother's occasional use of marijuana and, while not condoning such use, found it had never occurred in the child's presence or affected the child's welfare.

The supreme court in *Creusere v. Creusere* said: " '[t]he determination of the trial judge, *who saw the parties, observed their demeanor and heard their testimony* will not be overturned absent a manifest abuse of discretion.' " *Id.* at 790, 653 P.2d at 166 (quoting *Ridgway v. Ridgway,* 94 N.M. 345, 347, 610 P.2d 749, 751 (1980) (emphasis added)). With eighteen separate hearings over fifteen months, I must agree with the trial court that it "has had an ample opportunity to observe the demeanor of the parties." I would, therefore, affirm.

1. Although the majority correctly conclude that the trial court did not apply the post–1986 version as to the presumption, it appears from the carefully drawn findings that the trial court did consider all the factors set out in the later version, which, I believe, was proper.