896 P.2d 1171

Lanyce L. Smith TAYLOR,
Petitioner–Appellee,

v.

Walter C. TITTMAN, Jr., Respondent–
Appellant.

No. 15729.

Court of Appeals of New Mexico.

March 27, 1995.

Jane Bloom Yohalem, the Law Offices of Simon & Oppenheimer, Santa Fe and Albert J. Rivera, the Law Offices of Albert J. Rivera, Alamogordo, for petitioner-appellee.

Jefferson R. Rhodes, Burroughs & Rhodes, Alamogordo, for respondent-appellant.

## OPINION

HARTZ, Judge.

Walter C. Tittman, Jr. (Father) and Lanyce L. Smith Taylor (Mother) have an eight-year-old child by a marriage that ended in divorce. Father appeals that portion of a district court order terminating the parents' joint custody of the child and granting sole custody to Mother. The district court entered the order after a consolidated hearing on a motion by Father to award him primary physical custody of the child and a motion by Mother to allow the child to relocate to Japan with Mother and her husband. Because Father did not receive adequate notice that the hearing could be the basis for a decision by the district court to terminate joint custody, we reverse the award of sole custody to Mother, thereby reinstituting joint custody.

## BACKGROUND

Mother petitioned for dissolution of marriage on October 13, 1989. Shortly thereafter the parties agreed that their child would reside with Mother and that Father could

share time with the child. The decree of dissolution of the marriage was filed on September 25, 1990, at which time Mother was awarded interim custody and Father was permitted supervised visitation. On November 14, 1991 the district court entered its Final Determination of Custody and Parenting Plan, giving the parties joint legal custody and awarding Father primary physical custody of the child.

Mother sought a modification of the arrangement in August 1992. After several hearings the court entered an order on October 6, 1993, which continued joint custody but changed the award of primary physical custody from Father to Mother. The order also granted time sharing to Father and contained the following two provisions:

> 3. Unless both [Mother] and [Father] agree that a move from Alamogordo is appropriate and in [the child's] best interest, [Mother] must obtain consent from the court prior to any such move.

> 4. ... (j) *Dispute Resolution:* The parties will discuss all major changes in the child's life in order to try to reach agreement. If they cannot agree, after discussion, they will participate in conciliation or mediation to try and reach agreement. If conciliation or mediation does not resolve the parties' differences, then they will submit the matter to the district court, which may refer the matter to a special master, or *which may terminate joint custody,* among other resolutions. (Emphasis added.)

The order stated that the parenting plan set forth in the order was for a probationary period of 180 days and that either party could then obtain review by the court without needing to show a change of circumstances.

Later that month Mother moved to modify the order to reduce Father's time with the child, and Father moved to change physical custody from Mother to him. On November 16, 1993 the district court entered an order further restricting Father's visitation and prohibiting the parties from discussing certain topics with the child. The order was to remain in effect pending a hearing on Father's motion for change of physical custody.

On March 29, 1994 Father filed an amended motion seeking physical custody of the child. The motion alleged that Mother had unilaterally and arbitrarily revised the visitation schedule and had failed to consult with Father regarding a serious medical problem of the child. The following day Mother filed a motion for permission to relocate the child to Japan with Mother and her husband. The district court heard both motions in a day-long hearing on May 4, 1994. Evidence at the hearing indicated substantial disagreement between Father and Mother regarding the child's medical treatment, dental treatment, schooling, and other matters of importance. Both parties admitted that they had failed to consult with one another about many of these issues in a timely manner, but each claimed that the other had made consultation difficult or impossible. Mother testified that her husband was being transferred to a United States military base in Japan for a planned three-year period and that the airfare for a round trip from Alamogordo was $1800.

Until the very end of the hearing neither party addressed the possibility of terminating joint custody. The district court first hinted at its concern about joint custody after Father's counsel had concluded his closing argument and Mother's counsel had just begun his argument. The court interrupted to ask Father's counsel whether he thought that joint custody was going to work for the parties. Father's counsel responded that joint custody had worked when Father had primary physical custody. Then, at the conclusion of Mother's argument, the district court asked Mother's counsel whether he believed that the parties were suitable for joint custody. Counsel responded that he did not think that they were.

After the hearing Father submitted (1) a proposed finding of fact that prior to the hearing neither party had requested that joint custody be changed to sole custody and (2) proposed conclusions of law that it was improper for the court to grant sole legal custody when neither party had presented the issue to the court. The court's order entered on June 7, 1994 granted Mother sole custody of the child.

DISCUSSION

■ Fundamental to the fairness of a judicial proceeding is that the parties receive adequate notice of the issues to be determined by the proceeding. *See Corliss v. Corliss*, 89 N.M. 235, 238, 549 P.2d 1070, 1073 (1976). Here, neither Mother's motion nor Father's requested the court to consider termination of joint custody. Mother does not challenge the importance of notice. She contends, however, that two sources provided adequate notice to Father. The first source is the paragraph entitled "Dispute Resolution" in the order of October 6, 1993. The paragraph states that if the parties are not able to resolve their differences through conciliation or mediation, "they will submit the matter to the district court, which may refer the matter to a special master, or which may terminate joint custody, among other resolutions." The second source is New Mexico case law allegedly providing that given the issues presented to the court by the parties—(1) Father's request for primary physical custody predicated on the inability of the parties to agree on basic decisions regarding the child and (2) Mother's request for permission to relocate with the child—one possible outcome was the award of sole custody to one of the parents.

We disagree. With respect to the October 1993 order, Mother fails to distinguish between a grant of substantive power and the right to exercise that power in the absence of traditional procedural safeguards. It is one thing to say that a court has authority to consider a particular issue; it is quite another to say that a court may rule on the issue without giving the parties notice that it will consider the issue and without providing the parties an opportunity to gather and present their evidence.

*Tuttle v. Tuttle*, 66 N.M. 134, 343 P.2d 838 (1959), illustrates this proposition. A divorce decree had granted each parent custody of the parents' children for a portion of each year and prohibited either parent from removing the children from New Mexico without the other's prior consent. *Id.* at 135–36, 343 P.2d at 838–39. The father filed a motion requesting that the mother be held in contempt for removing one or both children to Texas. *Id.* at 136, 343 P.2d at 839. The mother then filed a motion seeking permission to take the children to reside with her in Abilene, Texas, during the period of each year in which she had custody. *Id.* At the close of the hearing the court made no findings in response to the parties' motions but announced that it would grant the father exclusive custody of the children. *Id.* An order was entered in accordance with the announcement. *Id.* at 137, 343 P.2d at 839. The Supreme Court rejected the contention that the district court's action was authorized by NMSA 1953, Section 22–7–6, which provided that the district court "may modify and change any order in respect to the guardianship, care, custody, maintenance or education of said children, whenever circumstances render such change proper." The Court explained, "This provision of the statute does not mean that the court can act without a hearing, after notice to all necessary parties, and after giving them an opportunity to present evidence in connection therewith." *Id.* at 138, 343 P.2d at 840.

The Dispute Resolution paragraph in the October 1993 order should be construed in the same manner. The paragraph recognizes the district court's reservation of power to reconsider the award of joint custody. It does not, however, state that joint custody can be terminated without further notice.

The case law relied upon by Mother does not establish that notice was unnecessary here. *Strosnider v. Strosnider*, 101 N.M. 639, 686 P.2d 981 (Ct.App.1984), did not address the issue of what notice is required before the district court can terminate joint custody. We acknowledge that even though neither party in *Strosnider* had moved to terminate joint custody, our opinion offered the termination option to the district court on remand. *Id.* at 647, 686 P.2d at 989. The offer was in accordance with the version of Section 40–4–9.1(B) in effect at the time, which contained a provision (not found in the current section) allowing the district court to terminate joint custody on its own motion. *See* NMSA 1978, § 40–4–9.1(B) (Repl. Pamp.1983); *Strosnider*, 101 N.M. at 646, 686 P.2d at 988. Nevertheless, we presume that on remand the parties would have had

the opportunity to present argument on the issue, including any contention that further evidence should be received by the district court, before the court could terminate joint custody.

Likewise, *Jaramillo v. Jaramillo*, 113 N.M. 57, 823 P.2d 299 (1991), is not in point. The opinion addressed the law governing relocation of a child when the parents have joint custody and one parent moves. It did not address the circumstances in which a court could order termination of joint custody. *Jeantete v. Jeantete*, 111 N.M. 417, 806 P.2d 66 (Ct.App.1990), is similarly distinguishable. The issue before us in *Jeantete* was whether the district court had erred in denying the father's motion to modify joint custody. *Id.* at 418, 806 P.2d at 67. Neither party had sought termination of joint custody, and the opinion did not address the procedural requirements for such termination.

Practical considerations strongly support our view that joint custody cannot be terminated except after a hearing following specific notice that continuation of joint custody will be at issue. Otherwise, much unnecessary effort and emotion could be expended on the question. Termination of joint custody and the award of sole custody to one of the parents is a matter of great importance. It should not be handled off the cuff. Indeed, the governing statute requires a thorough presentation. The district court must consider at least thirteen factors in determining whether joint custody is in the best interests of a child under the age of fourteen. NMSA 1978, § 40–4–9.1(B) & NMSA 1978, § 40–4–9(A) (Repl.Pamp.1994); *see* § 40–4–9.1(I) (when court grants or denies request for joint custody, it must state the basis for its decision; a statement that joint custody is or is not in the child's best interests is not adequate); *Jaramillo v. Jaramillo*, 103 N.M. 145, 147, 703 P.2d 922, 924 (Ct.App.1985) (interpreting provision of predecessor statute to require that court "specifically delineate the reasons for the modification or termination"); *cf.* § 40–4–9.1(A) (in initial custody determination joint custody presumed to be in child's best interests). If we were to hold that termination of joint custody could be decided by the district court after a hearing

at which neither party had broached the subject, competent counsel would hesitate to assume that the issue would not arise. Whenever a hearing was scheduled on a matter related to the care and custody of a child, counsel would likely devote substantial amounts of time and money to preparation on the issue of joint custody and would likely present such evidence at the hearing. A great deal of precious resources would therefore be expended and the emotional drain of the proceedings would undoubtedly be magnified, even when neither the parties nor the district court wished to address the issue of joint custody.

Furthermore, we note that Section 40–4–9.1(A) states in part:

> With respect to any proceeding in which *it is proposed* that joint custody be terminated, the court shall not terminate joint custody unless there has been a substantial and material change in circumstances affecting the welfare of the child, since entry of the joint custody order, such that joint custody is no longer in the best interests of the child. (Emphasis added.)

Implicit in this statutory language is that an order terminating joint custody should be entered only after a proceeding in which such an order was proposed. We conclude that the requirement that joint custody be terminated only after adequate specific notice that a proceeding will address the issue is a matter of legislative policy.

■ As an alternative argument, Mother contends:

> [B]oth parties, without objection, fully litigated the questions relevant to the trial court's decision to change custody. Where the issues are fully litigated, the parties are put on notice, and thus given an opportunity to defend adequate to meet due process requirements.

We agree that an issue may be tried by consent of the parties even though no pleadings raise the issue. But consent to try an issue outside the pleadings cannot be inferred from a failure to object to evidence relevant to the issue if the evidence is also relevant to matters within the pleadings. *See In re Estate of Kimble*, 117 N.M. 258, 262, 871 P.2d 22, 26 (Ct.App.1994). Much,

perhaps all, of the evidence at the hearings in this case was relevant to whether joint custody should be terminated. The evidence was also, however, relevant to the motions filed by the parties. Mother fails to point to any evidence that was not relevant to the parties' motions but was relevant to termination of joint custody. In this circumstance, we cannot find that the issue of termination of joint custody was tried by consent of the parties. In addition, we are not persuaded that the evidence at the hearing necessarily included everything that Father would have presented had he received adequate notice that the hearing would consider termination of joint custody.

■ Thus, we hold that the district court erred in terminating joint custody and awarding Mother sole custody. We need not, however, set aside all of the district court's order. The order permitted Mother to relocate to Japan with the child. It also set forth a visitation schedule (which would be categorized as a "period of responsibility," Section 40–4–9.1(L)(6), when the parents have joint custody), ordered Father and Mother and their spouses to obtain counseling, and continued prior orders regarding communications with the child. The substance of these provisions, and any other provisions that are not inconsistent with continuation of joint custody, should stand.

Finally, Father asks that we assign this case to a new judge on remand. We decline to do so. If the question of joint custody is raised in the future and the judge who has thus far presided believes that she can review the question with an open mind, then interests of judicial economy argue strongly for her continuing to preside. *See State v. Ricky G.*, 110 N.M. 646, 649, 798 P.2d 596, 599 (Ct.App.1990).

We reverse the district court order and remand to the district court to revise the order by deleting the provision granting sole custody to Mother and making such other modifications as are necessary because of the continuation of joint custody.

IT IS SO ORDERED.

BOSSON and WECHSLER, JJ., concur.