This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**WILLIAM DAVID KIMBRELL,**

Petitioner-Appellant,

v.                                                                      NO. 29,752

**LORRAINE KIMBRELL,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**James A. Hall, District Judge**

Gary W. Boyle
Santa Fe, NM

for Appellant

Sutin, Thayer & Browne, P.C.
James E. Bristol III
Michael J. Golden
Santa Fe, NM

for Appellee

Katherin M. Kinzner-Ellington
Ellington & Ellington LLC
Santa Fe, NM

Guardian ad Litem

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

On appeal, Husband raises nine issues, all related to the district court's determinations made during his divorce and child custody proceedings. Having reviewed Husband's arguments, we are unpersuaded. Accordingly, we affirm.

**BACKGROUND**

The following is a brief recitation of the facts underlying this matter. Additional facts will be developed, as necessary, in our discussion of each issue. Husband and Wife married in Nevada in May 2002. Husband and Wife have resided in New Mexico since 2005. During their marriage, they adopted three children. At the time of trial, the adopted children were fifteen, thirteen, and nine. Husband and Wife also had one biological child during their marriage. That child was four at the time of trial.

Husband and Wife separated in April 2006. On May 10, 2006, Husband filed a petition in district court indicating that Husband and Wife had permanently separated. Husband sought an order of legal separation pursuant to NMSA 1978, Section 40-4-3 (1973), dividing the community property and debts, defining Husband and Wife's parenting responsibilities, an order with regard to child support, and implementation of the couple's premarital agreement. Husband also sought the appointment of a guardian ad litem (GAL) and a Rule 11-706 NMRA expert to

evaluate the needs of the children and make a recommendation to the court concerning parenting. Finally, Husband requested that the court hear issues regarding an interim division of income and debts.

On June 8, 2006, pursuant to a stipulation by the parties, the court entered an interim order allocating income and expenses. Husband was ordered to pay Wife $4,500 per month for Wife's living expenses during the pendency of the divorce proceedings.

On May 23, 2007, the court entered a stipulated order regarding custody of the children. Pursuant to the recommendations of the appointed Rule 11-706 expert, Dr. Zieman, the parties were granted joint custody of their biological child and modified joint custody of the adopted children.

During the course of the divorce proceedings, Husband and Wife's relationship deteriorated significantly. Husband and Wife were unable to engage in basic communication or interaction without controversy. Out of alleged concern for the children's welfare, Wife recorded several telephone conversations between Husband and two of the children.

After numerous individual meetings with Husband, with Wife, and with the children, Dr. Zieman submitted a final report in which he concluded that Husband and Wife's disagreements were intractable and that joint custody was no longer feasible

or in the best interests of the children. The GAL reached the same conclusions and also submitted a final report to that effect.

Trial occurred over five days at the end of January and through the beginning of February of 2009. The district court entered findings of fact and conclusions of law in March of 2009. Those findings and conclusions were incorporated into the "Final Decree of Dissolution of Marriage" that was entered in June 2009.

In the final decree, the court dissolved the marriage. Wife was awarded sole custody of the couple's biological child and sole custody of two of the adopted children. Husband was awarded sole custody of the third adopted child. Pursuant to the couple's premarital agreement, Husband was ordered to pay Wife $4,920 per month for twenty-four months in spousal support. The court found that Husband's annual income was $200,000 per year, actual or implied, and ordered Husband to pay Wife $911.17 per month in child support.

The court awarded fees to the GAL and ordered Husband to pay the majority of those fees. On June 22, 2009, the district court entered an order holding Husband in contempt for failing to pay the GAL's fees as instructed.

**DISCUSSION**

In his appeal, Husband claims the district court erred in (1) denying his request for independent psychological evaluations of the children; (2) failing to offset the

spousal support awarded to Wife by the amount Husband agreed to pay Wife during the pendency of the divorce; (3) altering custody of the children without considering the requisite statutory factors; (4) terminating joint custody without first finding that either parent was unfit; (5) improperly calculating Husband's income for purposes of child support; (6) admitting into evidence, listening to, and relying upon the telephone conversations Wife surreptitiously recorded; (7) denying his motion to continue trial; (8) holding him in contempt; and (9) permitting one of Wife's witnesses to testify telephonically at trial. We address these arguments in this order.

## I.     Husband's Motion for Psychological Evaluation of the Children

Prior to trial, Husband moved for a psychological evaluation of the children by a doctor retained by Husband. That motion was denied. Husband asserts that this ruling was in error. According to Husband, the district court, by denying his motion for a psychological evaluation of the children, effectively ignored the mental health of the children in its custody determination contrary to NMSA 1978, Section 40-4-9(A)(5) (1977). Similarly, Husband also argues that the district court failed to consider the wishes of the children contrary to Section 40-4-9(A)(2). We are unpersuaded.

"In any proceeding involving custody, the courts' primary concern and consideration must be for the child's best interests." *Schuermann v. Schuermann*, 94

5

N.M. 81, 83, 607 P.2d 619, 621 (1980). "In determining which parent will provide best for those interests, courts should consider all relevant factors including, but not limited to" the five enumerated factors in Section 40-4-9(A). *Schuermann*, 94 N.M. at 83, 607 P.2d at 621. "The [district] court retains broad discretion and great flexibility in fashioning a custody arrangement that will serve the best interests of the children." *Thomas v. Thomas*, 1999-NMCA-135, ¶ 10, 128 N.M. 177, 991 P.2d 7 (internal quotation marks and citation omitted). "We will overturn the [district] court's custody decision only for abuse of discretion, and we will uphold the court's findings if supported by substantial evidence." *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Register v. Roberson Constr. Co.*, 106 N.M. 243, 244, 741 P.2d 1364, 1366 (1987).

Husband's allegation that the district court did not consider any evidence as to the mental health of the children contrary to Section 40-4-9(A)(5) is unfounded. Husband appears to assume that psychological testing was the only way to evaluate the children's mental health. This is not the case. The record reflects that Dr. Zieman evaluated the family and submitted extensive reports about the emotional and mental health of the children. The district court's custody determination was based, in part, on Dr. Zieman's recommendations. Accordingly, Husband's argument that the

6

children's mental health was ignored by the district court in its custody determination is without merit.

Husband's claim that the district court failed to consider evidence pertinent to the wishes of the children contrary to Section 40-4-9(A)(2) is equally unfounded. One of the adopted children expressed fear of Husband. Therefore, Wife was given sole custody of that child. One of the adopted children expressed her desire to remain in Husband's custody. Husband was given sole custody of that child. Evidence was submitted that the third and youngest adopted child, who was nine at the time of trial, was willing to do or say whatever was necessary to ensure that he continued to have a home and receive attention. Under these circumstances, relying on that child's wishes would have been imprudent as they were an unreliable basis to ascertain what was in that child's best interest. The couple's biological child was only four years old at the time of trial. In this case, it would also have been imprudent to consider that child's wishes in ascertaining what was in her best interests given her young age. We see no merit in Husband's contention that the district court failed to consider the children's wishes. It considered them where appropriate.

We also disagree with Husband's argument that the district court was required to expressly set forth its consideration of each enumerated factor in Section 40-4-9(A). The plain language of Section 40-4-9(A) requires the court to consider "all relevant

factors" in determining what is in the child's best interest. This language does not compel the district court to expressly state whether each enumerated factor was pertinent to the court's determination and how. Husband's reliance on *Taylor v. Tittman*, 120 N.M. 22, 896 P.2d 1171 (Ct. App. 1995), and *State ex rel. Children, Youth and Families Department v. Michelle B.*, 2001-NMCA-071, 130 N.M. 781, 32 P.3d 790 is similarly misplaced. These cases do not support his contention that the district court must expressly state how it considered each of the five enumerated factors.

In *Taylor*, we held that "joint custody cannot be terminated except after a hearing following specific notice that continuation of joint custody will be at issue." *Taylor*, 120 N.M. at 25, 896 P.2d at 1174. Our conclusion that sufficient notice was a prerequisite was partly premised on our observation that a district court must consider the enumerated factors in Section 40-4-9(A) along with all other relevant factors when deciding whether to terminate joint custody. *Taylor*, 120 N.M. at 25, 896 P.2d at 1174. Sufficient notice, we reasoned, would ensure that the parties had ample opportunity to develop facts pertinent to the relevant factors. *Id.* In *Michelle B.*, we held that the district court abused its discretion in failing to make any of "the required findings addressing the best interests of [the child]" and observed that several of the court's findings were inconsistent with its conclusion that termination was

warranted. *Michelle B.*, 2001-NMCA-071, ¶ 27. We find nothing in these cases which supports Husband's contention that a district court is required to expressly set forth its consideration of each enumerated factor in Section 40-4-9(A) when issuing a custody order.

**II.    Spousal Support Under the Premarital Agreement**

Husband and Wife entered into a premarital agreement which established the amount of spousal support Wife would be entitled to upon divorce. During the pendency of the divorce proceedings, Husband provided monthly payments to Wife for her living expenses pursuant to the stipulated interim order allocating income and expenses. Husband now argues that the district court erred in refusing to offset Wife's spousal support award by the amount Wife received during the pendency of the divorce proceedings. Husband claims that, as a consequence of the court's refusal to offset, Wife received an award of spousal support in excess of her entitlement under the premarital agreement. We disagree.

Resolution of this issue turns on interpretation of Husband and Wife's premarital agreement. A premarital agreement is a contract. *Lebeck v. Lebeck*, 118 N.M. 367, 373, 881 P.2d 727, 733 (Ct. App. 1994). "The interpretation of a contract is an issue of law that we review de novo." *Mueller v. Sample*, 2004-NMCA-075, ¶ 8, 135 N.M. 748, 93 P.3d 769. "It is a well established principle of contract law that

9

courts will not rewrite a contract for the parties. It is also established that courts will apply the plain meaning of the contract language as written in interpreting terms of a contract." *Christmas v. Cimarron Realty Co.*, 98 N.M. 330, 332, 648 P.2d 788, 790 (1982) (citations omitted).

The district court concluded that Husband was not entitled to offset the spousal support Wife was entitled to under the premarital agreement for the following reasons: (1) both the premarital agreement and the interim order were silent as to the question of offsets, and (2) the parties stipulated to the interim order. As discussed below, these conclusions are sound.

The district court's conclusion that both the premarital agreement and interim order are silent on this issue is correct. The pertinent provision in the premarital agreement includes the following language in a section discussing the termination of marriage by divorce or decree of separate maintenance:

In the event of termination of this marriage by reason of divorce . . . the parties agree as follows:

. . . .

(e) Neither party shall claim any amount for temporary or permanent maintenance or alimony, except that [Husband] would agree to pay [Wife] according to the following schedule[:]

. . . .

(ii) If married more than two (2) years but less than seven

10

(7) years, the sum of $50,000[] for two (2) years[.]

There is nothing in this provision which addresses offsets. At the very most, the plain language of this provision bars Wife from "claiming" temporary or permanent maintenance beyond that which she was entitled to under the premarital agreement. Husband does not argue that the money Wife received pursuant to the stipulated interim order constitutes a claim. Husband relies on the bald assertion that it is obvious that the money Wife received under the interim order is temporary for maintenance or alimony. Husband, however, fails to provide evidence that this was the parties' understanding, nor does he cite any authority for this proposition. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (refusing to consider a proposition not supported by authority). Further, the interim allocation of income and expenses was a stipulated order. Husband included no language alerting Wife to his current interpretation of the premarital agreement. Thus, the stipulated order is silent as to the issue of offsets. Based on the foregoing, we hold that the district court correctly interpreted the terms of the premarital agreement and that its award was appropriate under the terms of that agreement.

**III.    Change in Custody**

Husband argues that the district court terminated joint custody without

considering all of the factors in Section 40-4-9 and NMSA 1978, Section 40-4-9.1 (1999). Husband claims that because the court did not address all of the factors in these statues, the order was erroneous as a matter of law.

As proof of his claim, Husband merely set out a bullet list of the factors in the statutes cited above and, without citation or explanation, states that the district court failed to consider the factors. In contrast, both Wife and the GAL direct us to specific portions of the record which directly contradict Husband's claims and which demonstrate that evidence pertinent to the factors was indeed considered. Because Husband's argument is gravely underdeveloped and is plainly inconsistent with the record, we decline to further review it. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that relied on several factual assertions that were made without citation to the record).

**IV.    Joint Custody Presumption**

Husband argues that the district court erred in deciding that each parent should have sole custody of specific children. Husband claims that the grounds cited for this order were insufficient and that the court was required to find that the parents were unfit before awarding sole custody. New Mexico law requires no such finding in these circumstances.

"There shall be a presumption that joint custody is in the best interests of a child in an initial custody determination." Section 40-4-9.1(A).

> With respect to any proceeding in which it is proposed that joint custody be terminated, the court shall not terminate joint custody unless there has been a substantial and material change in circumstances affecting the welfare of the child, since entry of the joint custody order, such that joint custody is no longer in the best interests of the child.

*Id.* "The [district] court retains broad discretion and great flexibility in fashioning a custody arrangement that will serve the best interests of the children." *Thomas*, 1999-NMCA-135, ¶ 10 (internal quotation marks and citation omitted). "We will overturn the [district] court's custody decision only for abuse of discretion, and we will uphold the court's findings if supported by substantial evidence." *Id.*

On May 23, 2007, the district court entered a preliminary order granting Husband and Wife joint custody of their biological child and joint modified custody of their adopted children. This custody determination was based on the recommendations of Dr. Zieman. The district court modified custody in its final order based on updated recommendations from the GAL and Dr. Zieman.

The GAL observed that Husband and Wife's inability to co-parent and Husband's inability to place the children's well being and relationships with one another above his own desire to alienate Wife necessitated an award of sole custody. Dr. Zieman reached the same conclusion but was far more explicit in condemning

13

both Husband and Wife's conduct. In Dr. Zieman's view, Husband and Wife are not concerned with the best interests of their children but are primarily focused on defeating one another and winning control over financial resources. Accordingly, Dr. Zieman concluded that sole legal custody was not only prudent but necessary. This arrangement, Dr. Zieman found, would most effectively limit the amount of interaction between Husband and Wife which would in turn protect the children from being further ensnared in Husband and Wife's ongoing and intractable feud. This evidence plainly supports the district court's conclusion that the circumstances since the initial custody determination had changed materially and that joint custody was no longer in the children's best interests.

Relying on Section 40-4-9.1(A), Husband argues that a presumption in favor of joint custody had to be overcome before the district court could modify the initial custody determination. Husband misreads the statute. It states that the presumption in favor of joint custody is applicable only to the initial custody determination. Section 40-4-9.1(A). Thereafter, with regard to any proceeding where it is proposed that joint custody should be terminated, it is only necessary for the court to be satisfied that a substantial and material change in circumstances supports the conclusion that joint custody is no longer in the child's best interest. *Id.*

Relying on *Sanchez v. Sanchez,* 107 N.M. 159, 754 P.2d 536 (Ct. App. 1988),

14

Husband contends that the district court was required to issue a finding regarding parental fitness before it could award sole custody. Husband correctly observes that in *Sanchez* we found parental fitness significant for purposes of determining whether joint custody was in the child's best interest. *Id.* at 162, 754 P.2d at 539. However, Husband overlooks the fact that the former version of Section 40-4-9.1—the version predating the 1986 amendments to that statute—controlled in *Sanchez. Id.* at 161, 754 P.2d at 538. The prior version of Section 40-4-9.1 did not include a list of factors to guide courts in assessing the best interests of a child in a custody dispute. *Compare* § 40-4-9.1(B) (1981), *with* § 40-4-9.1(B) (1986). We relied on case law in *Sanchez* as the basis for our conclusion that parental fitness was an appropriate consideration. *Sanchez*, 107 N.M. at 162-63, 754 P.2d at 539-40. The 1986 amendments did not incorporate parental fitness as a factor. The present matter is controlled by the current version of Section 40-4-9.1 and, therefore, the district court was under no obligation to consider parental fitness in rendering its custody determination.

**V.      Imputed Income**

Husband argues that the district court incorrectly calculated his annual income for purposes of awarding child support. Specifically, he claims the district court erred in imputing $200,000 of income to him. We find no error in the district court's assessment of Husband's income.

15

"Findings made by the district court about the parents' incomes, as required by the guidelines to apportion child support, are reviewed to determine whether they are supported by substantial evidence." *Grant v. Cumiford*, 2005-NMCA-058, ¶ 21, 137 N.M. 485, 112 P.3d 1142.  With respect to Husband's finances, the district court found that Husband is a serial entrepreneur engaged in the buying and selling of businesses, that Husband presently owns a company involved in the natural gas business which he bought for two million dollars, and that Husband expects to earn $200,000 annually from this business.

The district court's decision to rely on Husband's own testimony regarding income to reach a determination regarding his actual income is appropriate under our case law.  In *Talley v. Talley*, 115 N.M. 89, 91, 847 P.2d 323, 325 (Ct. App. 1993), we held that a district court was entitled to consider potential as well as actual, present income to calculate a parent's gross income for purposes of child support.  Accordingly, even if Husband were merely estimating that he would earn $200,000 annually, it was not error for the district court to rely on Husband's estimation as potential income.

Accordingly, we hold that the district court's finding that Husband's annual income was $200,000 is supported by substantial evidence.  Furthermore, we reject Husband's argument that the district court erred by imputing income to him.  The

16

district court's conclusion that Husband's annual income was $200,000 was based on Husband's own testimony of his income.

**VI.    Telephone Recordings**

Prior to trial, Wife recorded several phone conversations between Husband and two of the children using a handheld tape recorder and the speaker phone option on her home telephone. She testified that she recorded the conversations out of concern for the children's well being; she claimed the children appeared to be adversely impacted after speaking with Husband, and she thus felt it was appropriate to monitor the calls. The district court concluded that Wife's decision to record the conversations did not violate Husband's constitutional rights and that the recordings were admissible.

Husband, citing 18 U.S.C. § 2515 (1968)—a federal statute that Husband contends prohibits the admission of evidence derived from intercepted telephone calls—argues that the district court committed reversible error in admitting the recordings. Husband requests that we reverse the district court's order and remand the matter for a new trial in which the tape recordings are not considered by the court, the Rule 11-706 expert, or the GAL. There are significant problems with Husband's arguments.

Husband fails to include "a statement explaining how th[is] issue was preserved

in the court below" in his brief in chief, contrary to Rule 12-213(A)(4) NMRA. There is nothing in Husband's brief describing the contents of the taped conversations. Furthermore, aside from simply stating the plain language of 18 U.S.C. § 2515 and claiming that admission of the tapes was a "material error," Husband has provided us no argument or guidance as to how this alleged error constituted reversible error. *See ITT Educ. Servs., Inc.*, 1998-NMCA-078, ¶ 10 (refusing to consider a proposition not supported by authority). Furthermore, even if we were to find the recordings were erroneously admitted, and that in doing so a reversible error was committed, Husband also fails to provide any argument as to the legal consequences of this error. *See id.* He simply wants the matter remanded for a new trial. There is no basis for this. *See id.*

Despite Husband's contention that the recordings were admitted over his objection, Husband failed to direct us to the location in the record where that objection can be found. "We will not search the record for facts, arguments, and rulings in order to support generalized arguments." *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 (filed 2008). The citation Husband provided, conclusion of law forty-five in the record proper at volume six on page 1464, does not lead us to an objection of any kind. In fact, it is an incorrect citation; conclusion of law forty-five is on page 1463 of the record proper. There is nothing regarding Husband's alleged

objection in this conclusion of law.

Husband claims that the district court admitted into evidence, listened to, and relied upon illegally obtained tape recordings of the recorded conversations. We cannot evaluate this contention because Husband fails to direct us to any portion of the record to support this claim. *See id.* Husband also fails to cite any finding of fact, conclusion of law, or any other order which would support his assertion that the district court relied on the recorded conversations in rendering any portion of its final order. *See id.* Our review of the order suggests that the opposite is true: the district court did not rely on the recorded conversations.

The telephone recordings were mentioned in the following portions of the order: findings of fact fifty through fifty-six and sixty and conclusions of law forty-three through forty-six. In these findings and conclusions, the court described Wife's motivation for making the recordings, determined that Dr. Zieman's findings and recommendations were not based on the recorded telephone conversations, concluded that Wife did not violate Husband's rights in making the recordings, and concluded that the recordings were admissible under 18 U.S.C. § 2510(5)(a) and 18 U.S.C. § 2511 (2008). These findings and conclusions do not support Husband's factual assertion that the district court relied on the recordings in rendering its custody determination. If there are findings and conclusions that do support his claim, it was

19

incumbent upon Husband to bring those to our attention.

Husband also claims that the district court admitted testimony and other evidence from expert and other witnesses who relied on the content of the recordings. Husband again fails to cite the record to support these factual assertions. Furthermore, these claims are thoroughly unspecific. Husband fails to explain what "testimony" or "other evidence" he is referring to and which experts relied upon it. In the opening portions of his brief in chief, Husband argues that both the recommendation of the GAL and Dr. Zieman's Fourth Family Psychological Evaluation were based on the content of the recorded phone calls. Presumably, this argument relates to Husband's contention that "expert" and "other witnesses" relied on the recorded conversations, but again Husband fails to cite the record to substantiate his claims regarding the GAL and Dr. Zieman's reports. Nor does Husband clarify which GAL report he was referring to.

There is yet one additional and critical problem with Husband's contention that expert and other witnesses relied on the content of the recordings. Our review of the reports that the court relied on for its custody determination—the GAL's January 20, 2009 recommendation and Dr. Zieman's Fourth Family Psychological Evaluation— reveals that they are not based on the recorded conversations. With respect to Dr. Zieman's final recommendation, the Fourth Family Psychological Evaluation, the

district court expressly found that it was not based on the recorded conversations. With respect to the GAL's January 20, 2009 recommendation, the recorded conversations are not mentioned anywhere in that report.

We decline to further address the arguments in this section of Husband's brief because those arguments are inadequately developed, are not sufficiently clear, and because Husband has not complied with our rules of appellate procedure in this section of his brief.

## VII. Continuance

On January 13, 2009, the district court issued a notice of hearing informing the parties that trial would commence on January 26, 2009. The district court previously consulted the parties at a motions hearing on January 8, 2009, as to whether this proposed trial date was acceptable. On January 21, 2009, Husband submitted a motion to continue the trial date. The district court denied that motion. Husband argues that the district court's decision to deny his motion violates the First Judicial District's local rules. We are unpersuaded.

"The granting or denying of continuances is a matter within the sound discretion of the [district] court, and such actions will be reviewed only where palpable abuse of discretion is demonstrated." *Schmider v. Sapir*, 82 N.M. 355, 358, 482 P.2d 58, 61 (1971). Husband does not argue that the district court abused its

discretion in denying his motion to continue. Rather, Husband claims that the district court's order violated Local Rule 1-401 NMRA. That rule, which governs settings in the First Judicial District, states "[a]s a general rule, notice of settings shall be given counsel at least four (4) weeks prior to the trial or hearing date but shorter notice may be given upon the consent and agreement of counsel or where, in the discretion of the judge, less notice is required." Local Rule 1-401A. The plain language of this rule provides that courts in the First Judicial District shall provide parties forty weeks' notice of a setting but may schedule settings that would result in a shortened period of notice at their discretion. In the present matter, the district court's decision to provide a shortened period of notice was not an abuse of discretion.

**VIII. Contempt**

After trial, the court awarded fees to the GAL and ordered Husband to pay the majority of them. At a hearing on the GAL's fees on May 29, 2009, Husband claimed that he could not afford the fees. The district court observed that Husband, because he was uncooperative and difficult, was partly to blame for the amount of the GAL's fees. The court concluded that the fees were reasonable and ordered Husband to pay them.

On June 18, 2009, the district court held a hearing on an order to show cause as to why Husband had not paid the GAL as ordered. Husband was present and

22

testified at that hearing. Husband again claimed that he could not afford the fees. The district court rejected this claim and again ordered Husband to pay them. The district court warned Husband that if he failed to comply, he would be held in contempt and would be jailed.

On June 22, 2009, the district court entered an order holding Husband in contempt for failing to pay the GAL's fees as ordered. In the order, the district court established a payment schedule whereby Husband was required to pay certain amounts by specific dates. The first payment date was June 26, 2009. According to the order, if Husband failed to submit $40,000 to the GAL by that date, he would be required to report to the Santa Fe County Detention Center to begin serving a sixty-day sentence. Additional payment dates were scheduled for July 30, 2009, and August 30, 2009. The order also commanded Husband to make timely payment of all future GAL fees that he may be ordered to pay. Husband submitted payment on June 26, 2009 as ordered. Husband complied with the remaining scheduled payment dates.

Husband argues that the district court committed reversible error in finding him in contempt. This claim is based on two grounds. First, Husband asserts that he received inadequate notice of the contempt proceeding. Second, Husband argues that he was entitled to a jury trial on the contempt charge. We are unpersuaded by both arguments.

As early as May 29, 2009, Husband was aware of the order requiring him to pay the GAL's fees, and he unsuccessfully argued that he could not afford to pay them. Husband was present and testified at the June 18, 2009 hearing on the order to show cause as to why he refused to pay the GAL's fees. The district court explicitly informed Husband at that hearing that it rejected his allegation that he could not afford the GAL's fees, that he was required to pay those fees, and that failure to comply with the court's order would result in a finding of contempt. Husband did not comply with the court's order. On June 22, 2009, Husband was found to be in contempt. Husband cannot complain of lack of notice. He was personally informed on June 18, 2009 by the court of the consequences of disobeying its order and was not held in contempt until after he failed to pay.

Husband also contends that he is entitled to a jury trial for the contempt charge. New Mexico case law does not support this position. "[T]here is no right to a jury trial for contempt charges except where potential criminal sanctions exceed six months in jail or a fine of more than $1000[.]" *Chaara v. Lander*, 2002-NMCA-053, ¶ 19, 132 N.M. 175, 45 P.3d 895. Husband was informed that he would be sentenced to sixty days in jail unless he complied with the payment schedule. Husband interprets the order as potentially subjecting him to a minimum of four potential sixty-day sentences. The language of the order, however, does not support this contention.

24

The contempt order commands Husband to render payment as scheduled and threatens a single, sixty-day sentence for failure to comply. As Husband was not sanctioned with a potential jail sentence exceeding six months, he was not entitled to a jury trial.

Furthermore, Husband was held in civil contempt—not criminal contempt. The clear purpose of the contempt finding and potential sanction was to ensure Husband complied with the court's decision to award the GAL fees. *See State ex rel. Bliss v. Greenwood*, 63 N.M. 156, 159, 315 P.2d 223, 225 (1957) ("Where the primary purpose is to provide a remedy for an injured suitor and to coerce compliance with an order, the contempt is civil."). There are important distinctions between civil and criminal contempt. *See In re Klecan*, 93 N.M. 637, 638, 603 P.2d 1094, 1095 (1979) ("Civil contempts are those proceedings instituted to preserve and enforce the rights of private parties to suits and to compel obedience to the orders, writs, mandates and decrees of the court; whereas criminal contempt proceedings are instituted to preserve the authority and vindicate the dignity of the court."). Husband does not address whether a sanction for civil contempt may be considered a criminal sanction. As discussed, a party is entitled to a jury trial on a contempt charge only where criminal sanctions are involved.

The district court committed no error in holding Husband in contempt.

**IX.    Allowing Telephonic Trial Testimony**

25

Husband's final argument concerns the district court's decision to permit Steven Parker (Parker), a witness for Wife who was residing in Great Britain at the time of trial, to testify by telephone. Husband makes four arguments in support of his contention that the district court erred in permitting Parker to testify. First, relying on federal and out of state authorities, Husband argues that witnesses must testify in person to ensure that they are properly identified. Second, citing a legal treatise and a New Mexico Attorney General opinion, Husband claims that witnesses must appear in person so that the oath can be properly administered ensuring truthful testimony. Third, Husband claims that there is no rule in New Mexico which permits witnesses to testify telephonically at trial and that Rule 1-043 NMRA prohibits such testimony. Fourth, Husband argues that there are "sound policy considerations" prohibiting telephonic testimony, including that the district court will not be able to assess witness credibility, that witnesses might not testify truthfully, that witnesses will not understand the significance of the penalty for perjury, and that witnesses might be subject to outside influences requires in person testimony at trial.

We may summarily dismiss Husband's fourth argument, the argument based on public policy, because he again fails to cite any authority for these assertions. *See ITT Educ. Servs., Inc.*, 1998-NMCA-078, ¶ 10 (refusing to consider a proposition not supported by authority). As we explain below, Husband's other arguments were not

26

preserved.

In his brief in chief, Husband did not cite to where in the record he preserved his arguments. In his reply brief, Husband did cite to the record, but the citation Husband provided relates to the testimony of Dr. Siegel, not to the objections to Parker's telephonic testimony.

Wife did provide the correct citation to the record containing the discussion preceding Parker's testimony. As Wife points out, the parties addressed whether Parker should be allowed to testify by telephone beginning at 1:40:30 and ending at 1:43:50 on January 26, 2009. The district court first asked Wife to describe what she anticipated Parker would say. The district court then asked Husband to clarify the basis of his objection to allowing Parker to testify. Husband opposed allowing Parker to testify by telephone and claimed that Parker was biased in favor of Wife and angry with Husband. In Husband's view, it was necessary for Parker to be present so that Parker would have to look at Husband while testifying and to ensure meaningful cross examination. Husband alleged that Parker left the United States without consulting Husband and purchased his plane ticket with a credit card associated with Husband's business.

The district court then asked the GAL to express her opinion on the matter. The GAL thought Parker's testimony was significant and asked the court to allow him to

testify.

Based on the foregoing, the district court concluded that Parker should be permitted to testify by telephone. The court weighed the importance of Parker's testimony against the fact that he was living overseas and could not be present in court. The court ruled that the balance weighed in favor of allowing Parker to testify. The court acknowledged Husband's argument regarding bias and informed Husband that he would carefully consider the issue of Parker's credibility.

The foregoing summary of the arguments made at trial establishes that Husband did not preserve the arguments he now makes on appeal. He did not contend that Parker's absence would prevent the court from properly identifying Parker. He did not contend that Parker's absence would prevent the court from properly administering the oath, which would in turn prevent Parker from testifying truthfully. Finally, he did not contend that Rule 1-043 prohibits Parker from testifying by telephone. Because Husband failed to preserve these arguments, we decline to further review them. *See Smith v. Vill. of Ruidoso*, 1999-NMCA-151, ¶ 39, 128 N.M. 470, 994 P.2d 50 (declining to address arguments not made at trial for lack of preservation).

**CONCLUSION**

For the foregoing reasons, we affirm.

28

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**ROBERT E. ROBLES, Judge**