# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>December 28, 2018</u>

**NO. A-1-CA-35816**

**CARRIE BECK HOPKINS**
**f/k/a CARRIE DENISE BECK,**

      Petitioner-Appellant,

v.

**ALLAN BENTON WOLLABER,**

      Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LOS ALAMOS COUNTY**
**Matthew J. Wilson District Judge**

Carrie Hopkins
Los Alamos, NM

Pro Se Appellant

Cuddy & McCarthy, LLP
Aaron J. Wolf
Julie S. Rivers
Santa Fe, NM

for Appellee

**OPINION**

**HANISEE, Judge.**

**{1}** Carrie Beck Hopkins (Mother) appeals pro se the district court's order permitting her ex-husband, Allan Benton Wollaber (Father), to relocate with their children (Son and Daughter) (collectively, Children) to Massachusetts. In addition to raising various due process claims, none of which we find persuasive, Mother challenges what she perceives to be the district court's termination of joint legal custody and grant of sole legal custody to Father.[1]

**{2}** We conclude that the district court's order did not terminate, but rather modified, joint custody by awarding primary physical custody to Father. We affirm that aspect of the district court's ruling but, concluding that the district court's order is ambiguous as to legal custody, remand with instructions that the district court amend its order to clarify that Mother and Father continue to share joint custody of Children.

---

[1] As we discuss herein, custody is of two types in New Mexico: legal and physical. For clarity and purposes of this opinion, we hereinafter use the statutory terms "joint custody" or "sole custody" to refer to the two types of legal custody provided for in New Mexico. We take care to avoid use of the generic term "custody"—except to reflect where and how it is used in the record, or where contextually appropriate in our discussion—because of the inherently ambiguous nature of the term and the confusion that ensues (as evidenced by this case) when parties and courts fail to distinguish between and specify which type of custody is at issue.

**BACKGROUND**

**{3}** Upon their divorce in January 2013, Mother and Father (collectively, Parents) agreed to joint custody and a parenting plan that included a time-share schedule for Son and Daughter, then ages seven and five respectively. Under the original parenting plan, Mother was generally responsible for Children during the week, and Father was responsible for Children on weekends. Although the parenting plan was amended at various times to modify Parents' timesharing arrangement to alternating weeks of responsibility and address other issues, legal custody of Children remained joint in Mother and Father.

**{4}** At some point in 2015 Father began exploring a possible relocation to Boston, Massachusetts, but indicated an unwillingness to move without Children. In February 2016 Father formally filed for a "change of custody and to relocate with" Children to Boston, requesting "that he be awarded sole legal custody and that he be permitted to relocate with [Children] prior to the upcoming 2016-2017 school year." The district court referred the parties to Family Court Services for an advisory consultation and expedited the schedule because Father had already obtained new employment in Boston and hoped to relocate with Children by Fall 2016. Upon completion of the consultation process, advisory consultant Gary Lombardo recommended that "[C]hildren primarily reside with Father and relocate

2

with Father to the Boston, Massachusetts area." Lombardo's report also included a recommendation that "Father maintain sole legal custody" of Children.

**{5}** A two-day hearing was held in July 2016. At the end of the hearing, the district court granted Father's motion to relocate with Children and adopted Lombardo's recommendations in full "without modification." The district court's written order said nothing about legal custody, i.e., whether Parents would retain joint custody or whether joint custody was being terminated and sole custody being awarded to Father. Mother moved for reconsideration and to stay the district court's order. From the district court's denial of both motions, Mother appeals.

**DISCUSSION**

**{6}** Mother makes two arguments on appeal: (1) the district court erred in "terminating the joint custody award[,]" granting Father sole custody, and permitting Father to relocate Children to Boston; and (2) the district court's "termination of joint custody" deprived Mother of her constitutional right to due process of law. We address each issue in turn.

**I.    The District Court's Custody Determination**

**{7}** Mother argues that the district court erred by "terminating the joint custody award" and awarding Father sole custody absent a finding that "there was a substantial and material change in circumstances justifying termination of joint custody." Mother contends that a custodial parent's long-distance relocation "is not

3

necessarily" a basis for terminating joint custody because "parents can—and do—continue to share joint custody of their children even when they do not live in the same state." Mother additionally challenges that aspect of the district court's order permitting Father to relocate Children to Boston. She argues that Father failed to meet his burden of demonstrating that it was in Children's best interest to move with Father and that the district court erred by granting Father's motion to relocate without considering the needs and best interests of Children.

**{8}** We first address whether the district court's ruling indeed effectuated termination of Mother's legal custodial rights or merely modified Parents' existing custody arrangement to accommodate Father's relocation. We then resolve whether the district court erred in modifying custody by awarding primary physical custody to Father.

**Standard of Review**

**{9}** "We review a district court's child custody determination for abuse of discretion." *Hough v. Brooks*, 2017-NMCA-050, ¶ 18, 399 P.3d 387, *cert. denied*, ___ P.3d ___ (No. S-1-SC-36387, May 4, 2017). To the extent the issues presented involve construction of New Mexico's custody statutes, our review is de novo. *See id.* ¶¶ 20, 21 (noting that the question of whether New Mexico's joint custody statute, NMSA 1978, § 40-4-9.1 (1999), applies to the facts of that case "is an issue of statutory construction that we review de novo").

4

**A.      The District Court Order Modified and Did Not Terminate Joint Custody**

**{10}**  We begin by noting that it is not entirely clear whether the district court appreciated, much less intended, that its ruling might, in fact, result in termination of joint custody. The district court's order neither states—from the standpoint of *legal* custody—that joint custody was being terminated nor expressly grants Father sole custody. Rather, the district court's order adopts "without modification" Lombardo's recommendations, which included that "Father maintain sole legal custody." But that recommendation reflects a critical misunderstanding of the preexisting legal status, i.e., that Father had never, in fact, been awarded "sole legal custody."[2] It is unclear what Lombardo's apparent belief that Father had already been granted sole custody—evinced by his recommendation that Father *maintain* sole custody—was based upon, or that Lombardo or the district court understood the legal significance of that particular recommendation. But by adopting Lombardo's recommendations wholesale and without modification or clarification,

---

[2] The record indicates that the first time any mention of sole custody occurred was in Dr. Priscilla Roberts' December 2015 priority consultation report, in which she departed from earlier recommendations that "Mother and Father maintain joint custody" and for the first time recommended that "Father have sole legal custody." However, Dr. Roberts' December 2015 recommendations were never adopted due to Parents' respective objections. Instead, the parties proceeded to the advisory consultation in preparation for a custody hearing on Father's February 2016 motion for "change of custody."

the district court arguably terminated joint custody and, at the very least, rendered uncertain the legal custodial status of Mother and Father.

**{11}** We conclude that the district court's order is ambiguous because it does not clearly address, or certainly and unequivocally resolve the threshold question of whether Mother's joint custody status was terminated and the related question of whether sole custody was awarded to Father. *See Allred v. N.M. Dep't of Transp.*, 2017-NMCA-019, ¶ 23, 388 P.3d 998 (explaining that "[a] judgment must be certain and unequivocal such that it disposes of the matters at issue between the parties [such] that they will be able to determine with reasonable certainty the extent to which their rights and obligations have been determined" (alterations, omission, internal quotation marks, and citation omitted)), *cert. denied*, ___ P.3d ___ (No. S-1-SC-36235, Jan. 12, 2017). We, therefore, proceed to construe the order to determine the district court's intention, i.e., whether it intended to terminate joint custody or merely modify Parents' existing custody arrangement. *See id.* ("Our goal in construing an ambiguous judgment is to determine the intention and meaning of the author." (alteration, internal quotation marks, and citation omitted)). To aid our construction, we look to the judgment, pleadings, and entire record. *See id.* (explaining that "if the meaning [of a judgment] is obscure, doubtful, or ambiguous, the judgment, pleadings, and entire record may always be resorted to for the purpose of aiding in the construction thereof" (internal quotation

6

marks and citation omitted)); *see also Fed. Nat'l Mortg. Ass'n v. Chiulli*, 2018-NMCA-054, ¶ 14, 425 P.3d 739 (explaining that "when an order or judgment has some ambiguity or uncertainty, it may be construed in the light of the pleadings, other portions of the judgment, findings, and conclusions of law").

**{12}** We begin, however, with a discussion of the differences between (1) legal and physical custody, and (2) modification and termination of custody, a discussion intended to clarify important distinctions in the law that were blurred, confused, and conflated in this case, leading to the ambiguity we must now resolve. These clarifications are important because different legal standards apply—and the party seeking a change in legal custody bears a different evidentiary burden—when termination of joint custody, as opposed to modification of physical and/or legal custody, is sought. We explain.

**1. Legal Versus Physical Custody, and Termination Versus Modification of Custody**

**a. Legal Versus Physical Custody**

**{13}** In the context of determining the custody of children upon dissolution of marriage in New Mexico, "custody" is defined as "the authority and responsibility to make major decisions in a child's best interests in the areas of residence, medical and dental treatment, education or child care, religion and recreation[.]" Section 40-4-9.1(L)(2) ; *see In re Guardianship of Ashleigh R.*, 2002-NMCA-103, ¶ 13, 132 N.M. 772, 55 P.3d 984 ("Legal custody is a status created by court order

7

and vests in a person [or persons] the right to determine where and with whom a child will live."). New Mexico statutorily recognizes two types of legal custody: (1) "joint custody," in which custody of a child is awarded to two parents, Section 40-4-9.1(L)(4), (2) "sole custody," which awards custody of a child to one parent, Section 40-4-9.1(L)(8). Joint custody is presumed to be in the best interests of a child when an initial custody determination is made. Section 40-4-9.1(A).

**{14}** An award of joint custody entitles each parent to (1) "significant, well-defined periods of responsibility for the child"; (2) "responsibility for the child's financial, physical, emotional and developmental needs during that parent's periods of responsibility"; and (3) the right to be consulted by the other custodial parent "on major decisions involving the child before implementing those decisions[.]" Section 40-4-9.1(J). In other words, joint custody "give[s] to both parents an equal voice in the children's education, upbringing, and general welfare." *Strosnider v. Strosnider*, 1984-NMCA-082, ¶ 18, 101 N.M. 639, 686 P.2d 981 (internal quotation marks and citation omitted). By contrast, where sole custody is awarded to one parent, the noncustodial parent enjoys merely the right of "visitation," which is defined as "a period of time available to a noncustodial parent, under a sole custody arrangement, during which a child resides with or is under the care and control of the noncustodial parent." Section 40-4-9.1(L)(9). A noncustodial parent, i.e., a parent who is not granted or is terminated from joint

8

custody, necessarily does not share the same decision-making rights and parenting status that the custodial parent enjoys. Thus, there is legal—as well as social—significance to being designated a joint custodian and, concomitantly, to having one's joint custodial rights terminated. *See Taylor v. Tittman*, 1995-NMCA-034, ¶ 14, 120 N.M. 22, 896 P.2d 1171 ("Termination of joint custody and the award of sole custody to one of the parents is a matter of great importance.").

**{15}** Physical custody refers simply to the period of responsibility for which each parent—whether custodial or noncustodial—has physical care and supervision of the child or children. *See* NMSA 1978, § 40-10A-102(14) (2001) (defining "physical custody" as "the physical care and supervision of a child"); *Jaramillo v. Jaramillo*, 1991-NMSC-101, ¶ 14 n.4, 113 N.M. 57, 823 P.2d 299 (explaining that "the term 'physical custody' is synonymous with other terms used in Section 40-4-9.1, including the term 'residence,' and, importantly, the term 'period of responsibility' " (citation omitted)). In general, physical custody may be shared, meaning that each parent has physical custody approximately one-half of the time, or one parent may be designated as the primary physical custodian, meaning that "the child resides with that parent more than half the time." *Jaramillo*, 1991-NMSC-101, ¶ 14.

**{16}** Importantly, while physical and legal custody are related, the specific types of legal custody (joint or sole) and physical custody (shared or primary) are neither

mutually dependent nor mutually exclusive.[3] Thus in a situation where the parents have joint custody, physical custody may be shared, or either parent may be designated primary physical custodian, which status is subject to change without necessarily affecting legal custody. *See* § 40-4-9.1(L)(4) (providing that "[j]oint custody does not imply an equal division of the child's time between the parents"); *Taylor*, 1995-NMCA-034, ¶¶ 2-3 (explaining that the parties originally shared "joint legal custody" with the father being awarded "primary physical custody" and that upon a later motion by the mother, a new order was entered that "continued joint custody but changed the award of primary physical custody" from the father to the mother); *Jaramillo v. Jaramillo*, 1985-NMCA-062, ¶ 15, 103 N.M. 145, 703 P.2d 922 (explaining that "[a]n award of joint custody . . . may at times require the [district] court to adopt a specific finding indicating which parent, in the child's best interest and welfare, should be awarded primary physical custody of the child"). In other words, legal custody does not automatically determine or establish the terms of physical custody. Likewise, the designation or modification of physical custody neither dictates nor necessarily bears on either the type of legal custody awarded or whether there should be a change in legal custody, i.e., from joint to sole or sole to joint. Indeed, as we next discuss, the applicable standards

---

[3] Indeed, even a noncustodial parent, i.e., a parent without legal custody, enjoys physical custody of his or her child(ren) during periods of visitation. *See* § 40-4-9.1(L)(9).

and evidentiary showings that must be made to *modify* custody (physical or legal), on the one hand, and *terminate* joint custody, on the other, differ.

**b.      Modification Versus Termination of Custody**

**{17}**   Custodial inquiries begin with the well-established rule that once custody has been initially determined, "[e]very presumption is in favor of the reasonableness of the original decree" and "the burden is on the moving party to satisfy the court that circumstances have so changed as to justify the modification" of custody. *Schuermann v. Schuermann*, 1980-NMSC-027, ¶ 4, 94 N.M. 81, 607 P.2d 619 (internal quotation marks and citation omitted). As this Court has explained, this rule "is based upon policy grounds recognizing that[] frequent changes . . . are difficult for children to adapt to even under the best of circumstances." *Campbell v. Alpers*, 1990-NMCA-037, ¶ 20, 110 N.M. 21, 791 P.2d 472 (alteration, internal quotation marks, and citation omitted). The Legislature has provided that "[t]he court may modify and change any order . . . in respect to the . . . custody, maintenance or education of the children whenever circumstances render such change proper." NMSA 1978, § 40-4-7(G) (1997). We have interpreted this to mean that "a court may modify a custody order only upon a showing of a substantial change in circumstances affecting the best interests and welfare of the child, and a showing that such change of circumstances has occurred since the entry of the prior custody order." *Campbell*, 1990-NMCA-037, ¶ 20.

11

**{18}** Termination of joint custody is, no doubt, a type of custody modification, but one that is specially governed by a separate statute. In 1986 the Legislature for the first time adopted the presumption in favor of joint custody in initial custody determinations. *Compare* 1981 N.M. Laws, ch. 112, § 1(a) (providing that "[i]n any proceeding in which there is at issue the custody of a minor, the court should first consider an award of joint custody of the minor if it is in the best interests of the minor"), *with* 1986 N.M. Laws, ch. 41, § 1(A) (providing that "[t]here shall be a presumption that joint custody is in the best interest of a child in an initial custody determination"). At the same time and following the establishment of that presumption, it specifically provided that:

> With respect to any proceeding in which it is proposed that joint custody be terminated, the court *shall not terminate* joint custody *unless* there has been a substantial and material change in circumstances affecting the welfare of the child, since entry of the joint custody order, *such that joint custody is no longer in the best interests of the child*.

Section 40-4-9.1(A) (emphasis added). In light of how the Legislature elected to define joint custody and its recognition in that definition of the fundamental nature and importance of the rights attendant to parenting, it is unsurprising that the Legislature established a different standard by which termination of joint custody—which effectively terminates one parent's right to an equal voice in the child's upbringing, *see Strosnider*, 1984-NMCA-082, ¶ 18—is to be determined. Thus, in accordance with the special standard established in Section 40-4-9.1(A), a

12

district court shall not terminate joint custody unless the party moving for termination has met his or her burden of proving that there has been (1) "a substantial and material change in circumstances" (2) that has "affect[ed] the welfare of the child" (3) "such that joint custody is no longer in the best interests of the child[,]" and (4) that the circumstances providing the basis for the proposed termination did not exist at the time the joint custody order was originally entered.

{19} Where a moving party fails to meet its burden or the record contains no evidence that termination was, in fact, sought, termination of joint custody is improper, though the terms of the continuing joint custody arrangement may otherwise still be modified. *See Taylor*, 1995-NMCA-034, ¶¶ 6, 17 (holding that "the district court erred in terminating joint custody and awarding [the m]other sole custody" where the record indicated that "neither party addressed the possibility of terminating joint custody[,]" but affirming other provisions modifying joint custody, including permitting the mother to relocate with the child to Japan, the father's periods of responsibility, and "any other provisions that are not inconsistent with continuation of joint custody").

**2. The District Court's Ruling Affected Modification, Not Termination, of Joint Custody and Modified the Physical Custody Arrangement**

{20} Returning to the district court's ruling in this case and applying the foregoing, we conclude for the following reasons that the district court intended not to terminate Mother's joint custody rights but rather to modify joint custody by

13

awarding primary physical custody to Father and permitting Father to relocate Children to Boston.

**{21}** First, neither the district court's ruling from the bench nor its written order reflecting its oral ruling contains any indication that it considered, much less applied, Section 40-4-9.1's specific standard for terminating joint custody. Instead, the district court's order reflects that it treated the case as a custody *modification*, necessitated by Father's impending relocation, and applied the standard for modifying custody. This is most clearly evidenced by the district court's statement that "[t]he burden of proof as to whether it is in the best interest of the parties' minor children to relocate out of state with Father or remain in New Mexico with Mother does not lie with either party." This rule, while a proper statement of New Mexico law, applies in cases involving a relocating custodial parent's request to *modify* joint custody, not terminate it. *See Jaramillo*, 1991-NMSC-101, ¶¶ 5, 7, 26-27 (adopting a "procedure for relocation disputes" in cases in which joint custody in both parents is "continued" but one parent seeks modification of the joint custody arrangement in order to accommodate a long-distance relocation). That a parent's relocation may support, even necessitate, *modification* of a joint custody arrangement does not support the altogether different conclusion that a custodial parent's proposed relocation justifies *termination* of joint custody. Indeed, a parent's relocation, alone, cannot establish the basis for terminating joint custody

14

absent a showing that the relocation is "affecting the welfare of the child" *and* that "joint custody is no longer in the best interests of the child." Section 40-4-9.1(A). Thus, had the district court intended to terminate joint custody, it would have been error to do so by relying on and applying the standard set forth in *Jaramillo*. We, therefore, presume that the district court's application of *Jaramillo* indicates that it intended only to modify—not terminate—joint custody. *See Holcomb v. Rodriguez*, 2016-NMCA-075, ¶ 28, 387 P.3d 286 (explaining that "where the record is unclear, we presume regularity and correctness of the district court's actions" (alteration, internal quotation marks, and citation omitted)).

**{22}** Second, to the extent the district court and Lombardo believed that Father's relocation either necessitated or itself provided a basis for terminating joint custody and awarding sole custody to Father, we conclude that this mistaken belief was based on a misunderstanding of the distinctions and relationship between legal and physical custody and improper use of the term "sole custody" during the proceedings. This is most evident in Lombardo's testimony at the custody hearing, where he explained that one of the reasons he recommended that Father have "sole legal custody with the exception of changes to [C]hildren's religious upbringing" is that it is "pretty common in long-distance relocation scenarios for there to be sole legal custody for the decision-making" that the parent with physical custody of the children would logically be tasked with making given that the other parent would

15

have "a significant difficulty in having all the facts necessary to make those kinds of on-the-ground decisions in a community where they're not residing." In other words, because Father would be in Boston with Children and would have a better understanding of the local schools, activities, medical facilities, neighborhoods, etc., Lombardo recommended that "Father make all decisions regarding [Children's] education, child care, health care, ongoing activities, and residence." But the pragmatic need for Father to have decision-making authority out of logistical convenience does not supply a sufficient legal basis to terminate Mother's legal custody of Children, particularly when increased decision-making authority could be allocated to Father without terminating joint custody.[4] *See* § 40-4-7(G) (providing that the district court "may modify and change any order . . . in respect to the . . . custody . . . of the children whenever circumstances render such change proper") and § 40-4-9.1(J)(5)(d) (providing that "[a]n award of joint custody means that . . . decisions regarding major changes in a child's life may be

---

[4] We note that the other reason given by Lombardo—that there had been "a substantive challenge in the co-parenting relationship" between Mother and Father, meaning that Parents were engaging in "parallel" rather than cooperative parenting and decision-making—is also an insufficient basis for terminating a parent's joint custody. *Cf. Alfieri v. Alfieri*, 1987-NMCA-003, ¶ 27, 105 N.M. 373, 733 P.2d 4 (explaining that it has been "recognized that a custodial parent's demonstrated lack of cooperation [with the other parent] and refusal to follow prior court orders concerning visitation may constitute grounds for a change of custody *in an extreme case*" (emphasis added)).

16

decided by . . . allocating ultimate responsibility for a particular major decision area to one legal custodian").

**{23}** Moreover, we note that other aspects of Lombardo's recommendations further support the interpretation that what Lombardo was recommending was not, in fact, termination of joint custody but rather modified joint custody with primary physical custody in Father. First, Lombardo recommended that "Father not change the children's religious upbringing without Mother's prior written approval[,]" a recommendation plainly inconsistent with a goal of terminating Mother's custodial rights. *See* § 40-4-9.1(L)(2) (providing that "the authority and responsibility" to make decisions regarding the child's religion is encompassed within an award of "custody"). Additionally, Lombardo recommended that Mother be listed as a parent on all forms and that Father "immediately provide Mother with the relevant information" regarding decisions Father was empowered to make. Lombardo explained that the reason for these recommendations was that he believed it was important for Mother "to be able to obtain information for herself, to be able to evaluate and know for herself . . . how [Children] are doing and what kinds of treatment they're receiving." Finally, Lombardo described his timesharing recommendation as providing Mother with "seven opportunities for extended visitation" throughout the year, including a six-week period during Children's summer break, which Lombardo noted was "pretty good frequency given the long-

17

distance relocation." In other words, Lombardo's timesharing recommendation included "significant, well-defined periods of responsibility" for Children consistent with an award of joint custody. *See* § 40-4-9.1(J)(1) (providing that "[a]n award of joint custody means that . . . each parent shall have significant, well-defined periods of responsibility for the child").[5] Thus, by all indications, Lombardo's recommendations sought to maintain for Mother an "equal voice" in Children's upbringing, i.e., joint custody, to the extent practicable under the circumstances. *See Strosnider*, 1984-NMCA-082, ¶ 18.

**{24}** Finally, on the entire record before us it is apparent that even if Father intended to seek sole legal custody, he failed to present the sort of proof necessary to have the court grant such a request under the applicable statutory standard. Indeed, on appeal Father identifies nothing other than his relocation as a "substantial and material change" to support a change in custody, cites *Jaramillo*, 1991-NMSC-101, then goes on to list evidence supporting each of the best-interest factors to support *modification* of custody in accordance with *Jaramillo*. This reflects one of two things: either that Father did not intend to terminate joint custody and sought only to modify custody and prove that it was in Children's best interests to relocate with him to Boston in order to be granted primary physical

---

[5] Indeed, the district court's order denying Mother's motion for reconsideration includes a finding that Children "will still have significant blocks of time with their Mother."

18

custody, or that Father did not understand, and thus could not meet, his burden to effectuate termination of joint custody. In either case, we are satisfied that the absence of the kind of evidence necessary to terminate a parent's legal custody— particularly Father's failure to even identify, much less prove, a change of circumstance sufficient to warrant termination—further supports an interpretation of the district court's order as modifying rather than terminating joint custody.

**{25}**  For the foregoing reasons, we conclude that the district court did not intend to terminate joint custody, that its order affected modification—not termination— of joint custody in order to allow Father to relocate with Children to Boston, and that Mother and Father continue to share joint custody in Children. The next question, then, is whether the district court's modification of joint custody should be affirmed.

**B.      The District Court Did Not Abuse its Discretion in Modifying Legal and Physical Custody and Permitting Father to Relocate to Massachusetts**

**{26}**  Upon a party's motion to modify an existing joint custody arrangement due to a custodial parent's relocation, it "becomes incumbent on the [district] court to consider as much information as the parties choose to submit, or to elicit further information on its own motion . . ., and to decide what new arrangement will serve the child[ren]'s best interests." *Jaramillo*, 1991-NMSC-101, ¶ 27. "The guiding principle in child custody determinations is the best interests of the child." *Hough*, 2017-NMCA-050, ¶ 28. "In such a proceeding, neither parent will have the burden

19

to show that relocation of the child[ren] with the removing parent will be in or contrary to the child[ren]'s best interests." *Jaramillo*, 1991-NMSC-101, ¶ 27. Rather, "[e]ach party will have the burden to persuade the court that the new custody arrangement or parenting plan proposed by him or her should be adopted by the court[.]" *Id.* Ultimately, the district court must "adopt the arrangement or plan that it determines best promotes the child[ren]'s interests." *Id.* The district court must consider the applicable statutory factors for determining what is in the children's best interests, and its determination will be affirmed if its order reflects that it considered the relevant factors. *See Thomas v. Thomas*, 1999-NMCA-135, ¶ 16, 128 N.M. 177, 991 P.2d 7 (noting that "the trial court did not make point-by-point findings to correspond to the statutory factors" but concluding that the court's order "sufficiently tracks the factors, indicating that the court considered them in making its decision").

**{27}** Here, the district concluded that granting Father's motion to relocate Children to Boston would be in the best interests of Children. In support of this conclusion, the district court made numerous findings, including that: (1) Mother has "mental health issues" that "are difficult to correct"; (2) Father "is within the normal spectrum" according to the psychological testing that was administered; (3) "Father is more likely to promote co-parenting with Mother"; and (4) Children "are less likely to have problematic outcomes as adults and . . . more likely to have a

20

quality relationship with each parent" if they "live primarily with Father[.]" Notably, Mother does not challenge whether these findings are supported by substantial evidence, meaning they are binding on this Court. *See Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298 ("An unchallenged finding of the trial court is binding on appeal."). Rather, Mother principally complains that the district court failed to consider the wishes and needs of Children and "any negative impact on . . . Children that would be caused by a change in custody." The record does not support this contention.

**{28}** The district court specifically acknowledged that Children "do not want to relocate with Father" and that "[t]hey would like to remain in Los Alamos where they go to school and where their friends are currently located." The district court also noted that Children "are doing well in their current schooling." In other words, the district court considered Children's wishes regarding relocation and recognized that there were factors weighing in Mother's favor and against permitting relocation. But the fact that certain factors weighed against relocation does not compel the conclusion that the district court erred by ordering relocation. Additionally, we disagree with Mother that the district court failed to consider the possible "negative impacts" on Children resulting from, or "risks" associated with relocation. The district court specifically found that Children "are at an age that gives them the biggest opportunity to adapt positively to any relocation with

21

Father." This finding is supported by Lombardo's testimony that Children's resilience, cognitive capacity, and ages were predictive of a successful relocation. And implicit in this finding is the district court's acknowledgment, and rejection, of Mother's argument that relocation could put Children at a "significant" risk "of acting-out and self-harming behaviors." In other words, the record indicates that the district court considered all of the factors necessary in determining whether relocation was in the best interests of Children.

**{29}** We conclude that the district court did not abuse its discretion in modifying joint custody, awarding primary physical custody to Father, and granting Father's motion to relocate Children to Boston.

### III.   Mother's "Due Process" Arguments

**{30}** Mother argues that the district court's custody determination deprived Mother of her constitutional right to due process of law. She specifically contends that: (1) psychological evaluations relied on by the district court in its judgment "were not conducted in the ordinary manner"; (2) the district court erred by granting in part the motion for a protective order sought by Judy Baker, Children's therapist, thereby limiting Mother's ability to depose Baker and leading to Mother's "inability to cross-examine [Baker] on critical issues"; (3) "ordinary procedures for modifying joint custody were not followed"; (4) "there is both the appearance of bias, as well as actual bias" in this case, depriving her of her

22

"procedural due process right to have her case decided in a fair and impartial way"; and (5) the result in this case constitutes a violation of her and Children's "substantive due process rights to pursue their familial relationships."

**{31}** Mother first argues that the district court's judgment "is also infirm because it rests on psychological testing conducted in a highly unorthodox and improper manner." While Mother includes this argument under the umbrella of "due process" violations, she provides no explanation of how admission of and the district court's reliance on psychological test results—even if arrived at through an "unorthodox" process—deprived Mother of due process. She does not even mention "due process" or cite a single authority in support of her conclusory contention that "[i]t should shock the judicial conscience that mental and emotional disorders that have never been diagnosed can be bandied about in [such a] fashion to deprive a parent of custody of her children." Instead, Mother effectively argues that the district court should not have adopted Lombardo's recommendations in light of Mother's expert Dr. Ned Siegel's opinion that Lombardo "did not give a fair and even presentation of . . . [P]arents' psychological states." But the district court, as the finder of fact, was free to give Dr. Siegel's opinion as much or as little weight as it deemed appropriate. *See State v. Armijo*, 2005-NMCA-010, ¶ 4, 136 N.M. 723, 104 P.3d 1114 (noting that "it is for the fact-finder to evaluate the weight of the evidence"). Because Mother wholly fails to explain how the

23

psychological testing and the district court's reliance thereon deprived her of due process, we consider this argument no further. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."); *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (explaining that this Court will not consider propositions that are unsupported by citation to authority).

**{32}** Mother next argues that she was "not afforded a fair process" because the district court limited her ability to question Baker. However, Mother fails to explain how the district court's restriction of her ability to question Baker resulted in a violation of Mother's due process rights and cites no authority to support her argument. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."); *see also In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority."). Indeed, as our Supreme Court has explained, the opportunity to confront a witness in a civil, as opposed to criminal, proceeding "is not an absolute right. Instead the right [of due process] requires that parents be given a reasonable opportunity to confront and cross-examine a witness[.]" *In re Pamela A.G.*, 2006-NMSC-019,

24

¶ 12, 139 N.M. 459, 134 P.3d 746. To maintain a due process claim based on inability to cross-examine a witness, the party must "demonstrate that there is a reasonable likelihood that the outcome might have been different." *Id.* ¶ 14 (internal quotation marks and citation omitted). The record indicates that Mother questioned Baker extensively during her deposition and that Baker's counsel objected to very few of Mother's questions. Critically, Mother fails to demonstrate that the outcome here—modification of joint custody—might have been different had she been able to fully question Baker. We, therefore, conclude that Mother has failed to establish a due process violation resulting from entry of the protective order.

**{33}** Mother's next two arguments fare no better. Mother fails to demonstrate that the "ordinary procedures for modifying joint custody were not followed in this case" as she claims, much less that any purported failure to follow "ordinary procedures" somehow deprived her of due process. Mother also has not identified any statements or actions by the district court, Dr. Roberts, or Lombardo that would indicate an improperly favorable mindset toward Father over Mother, meaning she has failed to overcome the presumption of impartiality as she must in order to demonstrate the type of bias needed to support a due process claim. *See Am. Fed'n of State, Cty. & Mun. Emps. v. Bd. of Cty. Comm'rs of Bernalillo Cty.*, 2015-NMCA-070, ¶ 10, 352 P.3d 682 (explaining that "[t]he burden of

25

overcoming the presumption of impartiality rests on the party making the assertion of bias" and that "any alleged prejudice on the part of the decision-maker must be evident from the record and cannot be based on speculation or inference" (alteration, internal quotation marks, and citation omitted)), *vacated on other grounds by* 2016-NMSC-017, 373 P.3d 989; *U.S. W. Commc'ns, Inc. v. N.M. State Corp. Comm'n*, 1999-NMSC-016, ¶ 41, 127 N.M. 254, 980 P.2d 37 (explaining that "not all allegations of bias or prejudice are of the type that render a proceeding fundamentally unfair").

**{34}** Finally, Mother's argument that the district court's termination of joint custody deprived her of her fundamental right to raise her children is both effectively mooted by our conclusion that joint custody was not terminated and also without merit. While it is true that "case law recognizes parents' fundamental constitutional right to raise their children[,]" *Ridenour v. Ridenour*, 1995-NMCA-072, ¶ 7, 120 N.M. 352, 901 P.2d 770, "case law also establishes that parents' right to raise their children is not beyond regulation in the public interest." *Id.* ¶ 8. "New Mexico case law establishes that parents' rights are secondary to the best interests and welfare of the children." *Id.* ¶ 10. Here, the district court's decision to modify custody to allocate certain decision-making authority to Father was based on a consideration of the best interests of Children as previously discussed. Mother's argument that the district court's ruling "wrongly interfered with the pursuit of

26

Mother's parental relationship with . . . Children and deprived [her] of her constitutional right to due process of law" is simply unavailing. Under the district court's order and consistent with Lombardo's recommendations, Children "will still have significant blocks of time with . . . Mother." Additionally, Lombardo explained that his recommendations, adopted by the district court, included that Mother be listed as Children's parent on all forms because he believed it was important for Mother "to be able to obtain information for herself, to be able to evaluate and know for herself how the kids are doing and what kinds of treatment they're receiving." Lombardo also recommend that Father be required to provide Mother with summaries of Children's medical and dental issues as they arose and were being addressed as well as information regarding any changes in Children's education, residence, and ongoing activities. In other words, Mother's parental relationship with Children—while unavoidably impacted by the award of primary physical custody to Father and his relocation with Children to Boston—has been not only neither terminated nor interfered with in violation of Mother's substantive due process rights but, in fact, preserved and protected as much as conceivably possible under the circumstances.

**{35}**   Based on the foregoing, we conclude that Mother's due process rights were not violated by the proceedings and custody determination in this case.

**CONCLUSION**

27

**{36}** We affirm the district court's order modifying joint custody, granting Father primary physical custody, and permitting Father to relocate Children to Boston. Because of ambiguity in that order, however, we remand with instructions that the district court amend its order in accordance with this opinion.

**{37}** **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Chief Judge**

_____
**MICHAEL E. VIGIL, Judge**